IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
JAMES CRUM,                       )
                                  )
        Plaintiff,                )
v.                                )   CIVIL ACTION NO. 05-275
                                  )
KINGDOM OF SAUDI ARABIA and       )
ROYAL EMBASSY OF SAUDI ARABIA,    )
                                  )
        Defendants.               )
```

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants Kingdom of Saudi Arabia and Royal Embassy of Saudi Arabia's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiff Mr. James Crum filed suit against his former employer, the Kingdom of Saudi Arabia and the Royal Embassy of Saudi Arabia, for discrimination on the basis of national origin.  He alleges that after September 11, 2001, the defendants discriminated against him for placing an American flag decal on his car, ultimately firing him on August 1, 2002, after serving sixteen years as a limousine driver with the Saudi Arabian Embassy.  The first issue before the Court is whether it has jurisdiction to decide this case under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and 1602, *et seq.*,; more specifically, the Court must decide whether hiring an individual to drive a limousine constitutes "commercial activity" within the

1

meaning of the Foreign Sovereign Immunities Act[1].  The second issue before the Court is whether exercising jurisdiction over Mr. Crum's claim would violate the Vienna Convention on Diplomatic Relations, to which the United States and Saudi Arabia are parties.[2]  The Court holds that it is without jurisdiction to hear this claim of employment discrimination because hiring a driver does not constitute "commercial activity" within the meaning of the Foreign Sovereign Immunities Act.  The court also holds that it lacks jurisdiction to hear Mr. Crum's claim because exercising jurisdiction in this case would violate the Vienna Convention on Diplomatic Relations.

## I.  BACKGROUND

Mr. James Crum ("Plaintiff," "Mr. Crum") began working as a limousine driver in the Spring of 1986 for Defendants Royal Embassy of Saudi Arabia and the Kingdom of Saudi Arabia ("Defendants").[3]  During the time that Plaintiff worked for

---

[1] The immunity of foreign states is governed by the FSIA while the immunity of individual diplomats is governed by the Vienna Convention.

[2] The Court will not address defendant's argument regarding Title VII because the Court already lacks jurisdiction under the FSIA and the Vienna Convention.

[3] The Court relates the facts in the light most favorable to the plaintiff.  See FED. R. CIV. P. 12(c); *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (stating that in a 12(c) motion, all facts asserted in the complaint must be taken as true and all reasonable factual inferences must be

Defendants, he was well-qualified to do his job and fulfilled his employer's requirements for the position; he never had an accident or called in sick during sixteen years of service to the defendants.

According to Plaintiff's Complaint, after the attack on the World Trade Center Towers in New York City on September 11, 2001, Plaintiff alleges that his supervisor and other employees of the Embassy began making anti-American comments to Mr. Crum, including cursing at the plaintiff, calling him a "stupid American" and a "dumb-ass American." Drivers who were not American were not called these names.

Plaintiff's Complaint also alleges that in October 2001, Mr. Crum placed decals of the American flag on his personal automobile. Prince Bandar Bin Sultan's wife, Haifa Al Faisal asked Mr. Crum questions about his patriotic feelings, including whether he knew anything about individuals being held prisoner in Guantanomo Bay, Cuba. Shortly thereafter, two other employees of the defendants told Mr. Crum that if he did not remove the American flag decals from his car, he would be fired. Mr. Crum did not remove the decals from his car and was fired on August 1, 2002. Other limousine drivers who were not American who placed American flag decals on their personal cars were not terminated by Defendants.

---

drawn in favor of the plaintiff).

On January 2, 2003, Mr. Crum filed a verified charge of national origin discrimination under Title VII of the Civil Rights Act of 1964 with the United States Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights.  The EEOC issued a "Notice of Right to Sue Letter" to Mr. Crum on August 20, 2003.  On November 12, 2003, Mr. Crum filed suit in the United States District Court for the District of Columbia, alleging national origin discrimination under 42 U.S.C. § 2000e.  On December 10, 2004, District Judge Rosemary Collyer transferred this case to the United States District Court for the Eastern District of Virginia.

Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  In essence, Defendants argue: (1) that this Court has no jurisdiction to hear this claim of employment discrimination based on national origin because hiring a limousine driver does not constitute "commercial activity" within the meaning of the FSIA, (2) that exercising jurisdiction over the defendants would violate the Vienna Convention on Consular Relations, and (3) Defendants posit that this case should be dismissed because foreign diplomatic missions are not "employers" within the meaning of Title VII.

Plaintiff's three primary arguments in opposition to Defendants' Motion for Judgment on the Pleadings are: (1) that Defendants are not entitled to immunity from suit because

4

Defendants' employment of Plaintiff falls within the "commercial activity" exception to the Foreign Sovereign Immunities Act, (2) Plaintiff's suit is not barred by the Vienna Convention and (3) Defendants fit the definition of an "employer" under Title VII.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but "within such time as not to delay the trial." *See* FED. R. CIV. P. 12(c). Courts apply the same standard that is applied to 12(b)(6) motions to 12(c) motions for judgment on the pleadings. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (applying 12(b)(6) standard of review to a 12(c) motion). A Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of the plaintiff's claim that would entitle the plaintiff to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Burbach Broad. Co.*, 278 F.3d at 406 (stating

that in a 12(c) motion, all facts asserted in the complaint must be taken as true and all reasonable factual inferences must be drawn in favor of the plaintiff).  Conclusory allegations regarding the legal effect of the facts alleged need not be accepted.  *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).  Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response.  *Conley*, 355 U.S. at 47.

**B. Analysis**

***Commercial Activity Under the Foreign Sovereign Immunities Act***

The Court holds that it does not have jurisdiction to decide this case under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330 and 1602, *et seq.,* because this Court holds that hiring an individual to drive a limousine does not constitute a "commercial activity" within the meaning of the Foreign Sovereign Immunities Act.  The FSIA states that, "subject to existing international agreements to which the United States is a party at the time of the enactment of this Act a foreign state shall be immune from the jurisdiction of the Courts of the United States and of States..."  28 U.S.C. § 1604.  However, one of the exceptions to the rule granting immunity is when a defendant

engages in actions based on a "commercial activity." 28 U.S.C. § 1605(a)(2). A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. 28 U.S.C. § 1603(d). Further, the commercial character of an activity is determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. *Id.* at § 1604(d). A foreign state "engages in commercial activity...where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those powers peculiar to sovereigns." *Saudi Arabia v. Nelson,* 507 U.S. 349, 360 (1993).

Mr. Crum's case does not constitute an exception to the FSIA's grant of immunity because it does not pass the test for "commercial activity" because being employed as a chauffeur for the Saudi Arabian Embassy does not constitute a "commercial activity." The Fourth Circuit rejected a claim similar to Mr. Crum's in *Butters v. Vance International, Inc.,* 225 F.3d 462 (4th Cir. 2000). In *Butters*, the plaintiff, a female security agent, argued that by hiring and firing employees, the Kingdom of Saudi Arabia engaged in the type of conduct ordinarily undertaken by any private company in commerce. The Fourth Circuit however determined "the relevant act" as the "foreign sovereign's decision as to how best to secure the safety of its leaders"–an "act peculiar to sovereigns." *Butters*, 225 F.3d at 465. The

7

Fourth Circuit concluded in *Butters* that the employment decision was "not a commercial act in which the state was acting 'in the manner of a private player within the market,'" and therefore could not trigger the FSIA's commercial activity exception. *Id.* (quoting *Nelson*, 507 U.S. at 360).

Similarly, the Fourth Circuit's analysis of the FSIA's commercial activities exception is consistent with decisions from other jurisdictions. In *Kato v. Ishihara*, 360 F.3d 106 (2d Cir. 2004), the plaintiff worked in a New York firm hired by the city of Tokyo, Japan to promote the interests of Japanese companies in the United States. She claimed that she was sexually harassed in violation of Title VII. The Second Circuit held that Tokyo was entitled to immunity under the FSIA because it had not engaged in "commercial activity." *Kato,* 360 F.3d at 114. Like the Court in *Butters*, the Second Circuit reasoned that Tokyo's actions in hiring a marketing firm "were only superficially similar to actions typically undertaken by private parties" engaging in commerce, because a private party would "not typically undertake the promotion of other Japanese businesses, or the promotion of Japanese business interests in general." *Kato,* 360 F.3d at 111.

Some courts have held that an employee of a foreign government engages in "commercial activity" unless that employee is a member of that country's civil service. *Mukaddam v. Permanent Mission of Saudi Arabia to the United Nations*, 111 F.

Supp.2d 457 (S.D.N.Y. 2000). However, this rule was rejected in *Kato* where the Second Circuit "decline[d] to adopt the approach to the 'civil service' language of the House Report of the FSIA." 360 F.3d at 114 n.6. While Mr. Crum is not a member of Saudi Arabia's civil service, he is still carrying out a function that is not a "commercial activity." An embassy's decision to hire a limousine driver to transport embassy officials, their families and guests, and meet its everyday needs does not amount to engaging in "trade and traffic or commerce." *Republic of Argentina v. Weltover*, 504 U.S. 604, 614 (1992). Accordingly, the Court holds that it does not have jurisdiction to decide this case under the Foreign Sovereign Immunities Act because a foreign embassy hiring an individual to drive a limousine does not constitute "commercial activity" within the meaning of the Foreign Sovereign Immunities Act.

### *Claims under the Vienna Convention*

The Court also holds that it lacks jurisdiction to hear Mr. Crum's claim because exercising jurisdiction in this case would violate the Vienna Convention on Diplomatic Relations, to which the United States and Saudi Arabia are parties. Apr. 18, 1961, 23 U.S.T.3227, 500 U.N.T.S. 95. The text of Article 7 of the Vienna Convention plainly states that "the sending state may freely appoint the members of the staff of [its] mission." Mr

Crum's occupation as a limousine driver for the embassy puts him in the category of "service staff of the mission" as defined by Art. 1(c) of the Convention. Therefore, the Vienna Convention explicitly protects Saudi Arabia's right to "freely appoint" employees like Mr. Crum without interference from United States employment law.

This interpretation of the Vienna Convention is consistent with the Fourth Circuit's decision in *Tabion v. Mufti*, 73 F.3d 535 (4th Cir. 1996). *Tabion* involved a household employee of a Jordanian official who sued her diplomatic employers for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201. The issue in *Tabion* was whether the diplomatic immunity afforded by the Vienna Convention protected the defendants from a civil lawsuit brought by a domestic servant. The Fourth Circuit held that while hiring domestic help is something that non-diplomatic private citizens can do, Plaintiff's claim had to fail because her diplomatic employers had not engaged in any "commercial activity." *Id.* at 539. Further, the court held that domestic services were incidental to daily life and diplomats are to be immune to disputes arising out of them. *Id*. at 539. Plaintiff's claim in the case at bar is similar because Plaintiff was employed as a chauffeur for the Ambassador. Like the employee in *Tabion*, Plaintiff's job, consisting of driving the Ambassador, his family, staff, and guests, from place to place, was

incidental to daily life and Defendants are therefore immune from claims arising out of those duties.  Accordingly, exercising jurisdiction over Mr. Crum's claims would violate the Vienna Convention on Diplomatic Relations.

### III. CONCLUSION

The Court holds that it does not have jurisdiction to decide this case under the Foreign Sovereign Immunities Act because the Embassy's hiring of an individual to drive a limousine does not constitute "commercial activity" within the meaning of the Act. The Court also holds that it lacks jurisdiction to hear Mr. Crum's claim because exercising jurisdiction in this case would violate the Vienna Convention on Diplomatic Relations, to which the United States and Saudi Arabia are parties.

   For the foregoing reasons, it is hereby

ORDERED that Defendant Kingdom of Saudi Arabia and Royal Embassy of Saudi Arabia's Motion for Judgment on the Pleadings is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this 13th    Day of July, 2005.

                                          /s/
                                   Gerald Bruce Lee
                                   United States District Judge

Alexandria, Virginia

7/13/05